UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION – BAY CITY

IN RE:

JERMAINE MAURICE FRANKLIN, JR.,   Case No. 21-20657-dob
                                  Chapter 7 Proceeding
　　　Debtor.                      Hon. Daniel S. Opperman
_____/

## OPINION DENYING MOTION TO DISMISS OF MARK HAAK

### Introduction

Mark Haak, a party to a contract with Jermaine Franklin, Jr., asks this Court to dismiss Mr. Franklin's Chapter 7 proceeding because he filed it in bad faith. Mr. Franklin disagrees and urges this Court to deny Mr. Haak's Motion. Because the Court concludes Mr. Haak did not establish the requisite elements of bad faith as required by the Sixth Circuit Court of Appeals, the Court denies the Motion to Dismiss.

### Findings of Fact

A.   Boxer-Manager Contract and Legal Actions

Jermaine Franklin is a professional boxer who signed a Boxer-Manager Contract with Mark Haak on December 16, 2014. Mr. Haak acted as Mr. Franklin's manager and for a few years this arrangement was satisfactory to all. By 2018, the relationship soured such that Mr. Franklin filed a lawsuit in the District Court for the Eastern District of Michigan ("District Court Action") requesting that his contract with Mr. Haak be terminated. Mr. Haak answered the Complaint and filed a Counterclaim. This case proceeded through normal pretrial activities.

The Boxer-Manager Contract was for four years and six months but contained an option for Mr. Haak to extend the contract for two additional years by paying $25,000 on or before June 16, 2019. Mr. Haak elected to exercise this option, but because Mr. Franklin disputed the contract,

1

the parties agreed in the District Court Action that the $25,000 would be placed in a third party escrow.

Mr. Franklin and Mr. Haak filed Motions for Summary Judgment and the District Court entered an Amended Judgment addressing these motions on December 9, 2020. That Amended Judgment reads as follows:

AMENDED JUDGMENT

In accordance with the Court's Order entered November 6, 2020, ECF No. 60, and the subsequent Order entered December 9, 2020,

**IT IS HEREBY ORDERED AND ADJUDGED:**

1. Defendant Mark F. Haak's Motion for Summary Judgment, ECF No. 52, is **GRANTED IN PART**.

2. Plaintiffs' affirmative defenses, including any claim that Defendant Mark F. Haak committed a material or substantial breach of the Boxer-Manager Contract (ECF No. 18-2), are hereby **DISMISSED WITH PREJUDICE**.

3. Plaintiffs' claim for breach of fiduciary duty and request for an equitable accounting are hereby **DISMISSED WITH PREJUDICE**.

4. Judgment is hereby entered in favor of Defendant on his claim for declaratory relief under the Declaratory Judgment Act.

5. **THE COURT HEREBY DECLARES** pursuant 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 that

   a. the Boxer-Manager Contract is valid and enforceable under Michigan law and is not governed by Pennsylvania law;

   b. Jermaine Franklin is not permitted to unilaterally terminate the Boxer-Manager Contract; and

   c. Mark F. Haak remains Jermaine Franklin's manager for the remaining 837 days in the contract term from the date of the original Judgment, November 18, 2020.

6. The $25,000 held in escrow (ECF No. 24) shall be disbursed to the Katrina I. Crawley, PLC client trust fund account immediately upon the expiration of time to take an appeal and its disposition, if taken.

2

21-20657-dob    Doc 149    Filed 01/24/22    Entered 01/24/22 14:26:37    Page 2 of 17

      7. Any monies due Mark F. Haak pursuant to the Boxer-Manager Contract shall henceforth be paid by any payor and/or promoter directly to Mark F. Haak.

      8. The Court retains jurisdiction to enforce this Judgment during the remaining term of the Boxer-Manager Contract, including Jermaine Franklin's adherence to the force and effect of the Boxer-Manager Contract.

**IT IS SO ORDERED.**

Mr. Haak appealed the Amended Judgment because he thought the number of days should be 1,040, not 837. Mr. Franklin did not cross-appeal.

After the appeal was filed, Mr. Franklin filed an Amended Motion for Relief Under Rule 60(b), arguing that since he did not appeal the District Court Amended Judgment, the reason for holding the June, 2019 $25,000 funds, no longer existed. As gleaned from the District Court pleadings, Mr. Haak was concerned that the immediate release of the $25,000 to Mr. Franklin would be unfair if Mr. Franklin appealed. Mr. Haak responded to the Amended Motion for Relief, pointing out that the District Court lacked jurisdiction to grant relief because of the pending appeal. The District Court agreed with Mr. Haak, but entered an Indicative Ruling and Order as follows:

> Because the time remaining on the original term of the Agreement is being litigated on appeal, this Court is without jurisdiction to grant Plaintiffs' Motion for Relief.
>
> Nonetheless, this Court may enter an indicative ruling regarding Plaintiffs' Motion for Relief under Federal Rule of Civil Procedure 62.1. The Rule states,
>
> > If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may:
> >
> >   (1) defer considering the motion;
> >
> >   (2) deny the motion; or
> >
> >   (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.

Fed. R. Civ. P. 62.1(a). The threshold question, then, is whether Plaintiffs' Motion for Relief is timely. "A motion under Rule 60(b) must be made within a reasonable time . . . ." Fed. R. Civ. P. 60(c)(1). "Whether the timing of [a Rule 60(b)] motion is reasonable ordinarily depends on the facts of a given case including the length and circumstances of the delay, the prejudice to the opposing party by reason of the delay, and the circumstances compelling equitable relief." *Thompson v. Bell*, 580 F.3d 423, 443 (6th Cir. 2009) (internal quotation marks omitted).

The Amended Judgment was entered on December 9, 2020, and Plaintiffs' Motion for Relief was not filed until March 26, 2021. Importantly, though, Plaintiffs' Motion is premised on the inequity of continuing to retain the escrow funds after the option period was triggered, which did not occur until February 13, 2021. *See* ECF No. 77 at PageID.1121. Accordingly, there was a nearly six-week delay between when the option period triggered and when Plaintiffs' Motion was filed. While this delay weighs against a finding of timeliness, there is no indication that Defendant was prejudiced by the delay. Indeed, the issue of timeliness goes unmentioned in Defendant's response brief,[3] and while Mr. Zack noted the delay during oral argument, he did not explain how Defendant had been prejudiced. Accordingly, Plaintiffs' Motion for Relief is timely and therefore may addressed by an indicative ruling.

B.

As previously stated, Plaintiffs seek to modify the Amended Judgment under Rule 60(b) so that the $25,000 held in escrow is immediately disbursed. Rule 60(b) prescribes the procedure and grounds by which a "court may relieve a party or its legal representative from a final judgment, order, or proceeding." Fed. R. Civ. P. 60(b). Plaintiffs' Motion expressly relies on subsections (b)(5) and (b)(6). *See* ECF No. 77 at PageID.1120.

Under Rule 60(b)(5), the court may set aside a judgment where "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable[.]" Fed. R. Civ. P. 60(b)(5). Subsection (b)(5) is "based on the historic power of a court of equity to modify its decree in the light of changed circumstances." *See* 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 2863 (3d ed. 2021). "The party seeking relief bears the burden of establishing that changed circumstances warrant relief." *Horne v. Flores*, 557 U.S. 433, 447 (2009). "Whether prospective enforcement is no longer equitable under

---

[3]Regarding the application of Rule 62.1, the only argument that Defendant raises in his response brief is that Plaintiffs' "never asked for an indicative ruling," ECF No. 80 at PageID.1139. While Plaintiffs' Motion does not request an indicative ruling, the Motion at least mentions Rule 62.1 while discussing the jurisdictional question. ECF No. 79 at PageID.1120 n.2. Moreover, there is no language in the Rule requiring the moving party to ask for an indicative ruling. The Rule simply states that a court "may" enter an indicative ruling upon a "timely motion" for relief. Fed. R. Civ. P. 62.1.

Rule 60(b)(5) is a fact-intensive inquiry within the broad equitable powers of a district court." *Brown v. Tennessee Dep't of Fin. & Admin.*, 561 F.3d 542, 545 (6th Cir. 2009).

After thorough consideration of the record, including the parties' briefing and oral argument, this Court finds that the continued retention of the $25,000 in escrow is inequitable.

The $25,000 was deposited in escrow, pursuant to the stipulation of the parties, so that the parties' legal rights under the Agreement would be preserved while its enforceability was litigated. As such, once the Agreement was held to be enforceable, it became necessary to disburse the escrow funds consistent with the Agreement. To that end, as part of this Court's Order Granting in Part Defendant's Motion for Summary Judgment, Defendant was directed to submit a proposed judgment stating that "the $25,000 held in escrow be disbursed to Plaintiff Jermaine Franklin, Jr." ECF No. 60 at PageID.1011. The Judgment entered shortly thereafter provided, "The $25,000 held in escrow (ECF No. 24) shall be disbursed . . . immediately upon the expiration of time to take an appeal and its disposition if taken." ECF No. 62 at PageID.1015.

After Plaintiffs moved to amend the Judgment to provide for an immediate disbursement of the escrow funds, Defendant responded that the escrow provision was "reasonable because the funds are likely unrecoverable once disbursed, and there are 107 days until the two-year (730-day) option period begins." ECF No. 66 at PageID.1045. Defendant also claimed that "[t]he interim period (prior to expiration of appellate remedies and disbursement) will allow for a 'trust-but-verify' approach to Franklin's compliance with the declaratory judgment." *Id*. At the time, Defendant's reasoning was persuasive. Indeed, in rejecting Plaintiffs' Motion to Amend, this Court noted that "107 days remain[ed] on the Agreement even without the option" and that "it [was] unclear whether the $25,000 would be recoverable once disbursed." ECF No. 70 at PageID.1076.

In the four months since the Amended Judgment was entered, the operative factual conditions have changed substantially. Mr. Franklin has complied with the declaratory judgment; the 107 days remaining on the original term has expired; and Defendant—not Plaintiffs—has sought review from the Court of Appeals.

Plaintiffs' decision to forego a cross-appeal is particularly significant. When the Amended Judgment was entered, it was unclear whether the parties would continue litigating the enforceability of the Agreement. If the $25,000 was immediately disbursed to Plaintiff, and the Court of Appeals eventually found the Agreement unenforceable, Defendant might not have been able to recover the funds. In addition to being consistent with the time remaining on the Agreement, the escrow provision remedied Defendant's exposure to an undue risk. When Plaintiff opted not to challenge the enforceability of the Agreement on appeal, however, that risk largely evaporated. While Defendant is within his right to seek

5

review from the Court of Appeals, it would be inequitable to continue to allow him to withhold monies that—under this Court's calculation of the time remaining on the Agreement—rightfully belong to Mr. Franklin.

Defendant's argument that Plaintiffs should have raised the escrow provision on appeal is unpersuasive.[4] During oral argument, Ms. Campbell represented that Plaintiffs did not appeal from the Amended Judgment because, in her view, such an appeal would have been "frivolous." She explained that at the time the Amended Judgment was entered, Plaintiffs' counsel believed that the concerns identified by this Court were "legitimate." As illustrated by the foregoing discussion, Plaintiffs' Motion for Relief is premised on a substantial change in circumstances, not new explanations that should have been raised at the time Defendant filed his Notice of Appeal. *Cf. Tyler v. Anderson*, 749 F.3d 499, 509 (6th Cir. 2014) ("Rule 60(b) does not allow a defeated litigant a second chance to convince the court to rule in his or her favor by presenting new explanations, legal theories, or proof.").

Accordingly, Plaintiffs have demonstrated that the continued retention of the $25,000 in escrow is inequitable.[1] If this case is remanded from the Court of Appeals, Plaintiffs' Motion for Relief will be granted.

III.

Accordingly, it is **ORDERED** that if this case were remanded from the United States Court of Appeals for the Sixth Circuit, Plaintiffs' Motion for Relief from Judgment, ECF No. 77, would be **GRANTED**.

Mr. Haak and Mr. Franklin stipulated the $25,000 held in escrow could be released to Mr. Franklin and he received these funds by June 3, 2021 as evidenced by a Stipulated Order of Satisfaction signed by the District Court.

---

[4] "A Rule 60(b) motion is neither a substitute for, nor a supplement to, an appeal." *GenCorp, Inc. v. Olin Corp.*, 477 F.3d 368, 373 (6th Cir. 2007); *see also McNeil v. United States*, 113 F. App'x 95, 97–98 (6th Cir. 2004) ("A Rule 60(b) motion may be denied if it is merely an attempt to relitigate previously decided issues.").

[1] Because continuing to withhold the escrow funds is inequitable, Plaintiffs' argument that relief is justified under subsection (b)(6) need not be reached.

B.   Mr. Franklin Files a Chapter 7 Petition

Mr. Franklin filed his petition with this Court on June 4, 2021. He reported assets of $20,500 and debts of $164,085.85. His assets include a 2003 GMC Yukon with 250,000 miles valued at $1,900; an account with Sovita Credit Union with a balance of $15,000; and sole ownership of two entities named Jermaine Franklin, Inc. and 989 Assassin Promotions & Management, LLC with no value. He exempted all of his assets except $2,200 of the Sovita Credit Union account.

Mr. Franklin listed the following priority unsecured claims:

| | |
|---|---|
| City of Saginaw, Treasurer | $ 472.00 |
| Saginaw County Friend of the Court | $ 404.00 |
| Internal Revenue Service | $ 6,968.00 |
| State of Michigan | $ 1,186.00 |

The following are his listed unsecured, non-priority creditors:

| | |
|---|---|
| Aaron Alfaro | $12,000.00 |
| Bernice Franklin | $10,000.00 |
| Coast Professional, Inc. | $ 7,980.55 |
| Full Sail University | $ 1,575.00 |
| Jessie Addison | $ 2,000.00 |
| Katrina I. Crawley | $62,500.00 |
| Lorenzo Reynolds | $ 1,000.00 |
| Mark F. Haak | $42,000.00 |
| Raul Rosas | $ 6,000.00 |
| Salita Promotions Corp. | $10,000.00 |

Mr. Franklin also listed Mr. Haak as a party to a Boxer-Manager Contract that he labeled an executory contract. He listed no current income with a note that the prospect of a future fight in the next year is uncertain and monthly expenses of $3,525, which includes supporting two minor children. Mr. Franklin's Statement of Financial Affairs indicated no income for January 1, 2021 to June 4, 2021; $3,885 for 2020 and $32,297 for 2019. He also reported unemployment benefits of $2,698.62 for 2021 and $5,000 from a pandemic relief fund in 2020. He did not report the

7

$25,000 described earlier in this Opinion, as income, but subsequently disclosed that the $15,000 on deposit with Sovita Credit Union was the remainder of those funds.[1]

C. Initial Stages of Mr. Franklin's Chapter 7 Proceeding

Mr. Franklin's first meeting of creditors was held on June 29, 2021, but was continued and concluded on July 13, 2021. Mr. Haak requested documents and a 2004 examination of Mr. Franklin, as well as the 2004 examination of Mr. Alfaro, Ms. Bernice Franklin, Mr. Addison, Ms. Crawley, Mr. Reynolds and Mr. Rosas. The Court heard arguments regarding these examinations and allowed certain 2004 examinations with limitations.

Mr. Franklin filed a Motion to Enforce Rejection of Boxer Management Agreement which Mr. Haak contested. The Court heard arguments regarding this motion on September 21, 2021 and the Court requested additional briefing regarding certain issues. Meanwhile, the Chapter 7 Trustee negotiated a resolution with Mr. Franklin regarding exemptions and the Court approved that resolution by way of an order dated October 5, 2021. The Trustee filed his Final Report on November 17, 2021 and certified that he made distributions consistent with his report on December 15, 2021.

After some more hearings regarding 2004 examinations and discovery disputes, Mr. Haak filed an Adversary Proceeding seeking to have his obligation excepted from discharge, objecting to Mr. Franklin's discharge, and requesting a declaratory judgment providing for the enforcement of the Boxer-Manager Contract. Mr. Franklin responded by filing a Motion for Summary Judgment or in the alternative, a Motion to Dismiss.

---

[1] At the November 22, 2021 hearing, Mr. Franklin's counsel opined that there is no place to report the $25,000 in the Statement of Financial Affairs, and that this money was accounted for in the $15,000 Sovita Credit Union account, the $5,000 retainer received by Mr. Franklin's counsel later reported in a statement, and $5,000 spent by Mr. Franklin to pay living expenses.

D. Mr. Haak's Motion to Dismiss

Mr. Haak seeks dismissal of Mr. Franklin's Chapter 7 Petition under 11 U.S.C. § 707(a) and Sixth Circuit Court of Appeals cases, notably *Indus. Ins. Servs. v. Zick (In re Zick)*, 931 F.2d 1124 (6th Cir. 1991). In particular, Mr. Haak details the pre-bankruptcy history between him and Mr. Franklin, the discrepancies between Mr. Franklin's schedules and bankruptcy pleadings and information uncovered during discovery. Mr. Haak also compares this case to two other cases involving boxers, *In re Sammons*, 210 B.R. 197 (Bank. N.D. Fla. 1997) and *In re Jack*, 471 B.R. 252 (Bankr. D. Nev. 2012), and completes his analysis by addressing the fourteen factors articulated in *Zick*.

In reply, Mr. Franklin takes issue with Mr. Haak's arguments and paints a very different picture of Mr. Franklin's financial situation, all of which, per Mr. Franklin, compels the Court to deny Mr. Haak's request.

The Court heard oral arguments on November 22, 2021 and requested that the District Court pleadings regarding the $25,000 payment be filed with the Court. Those pleadings were filed and the Court heard additional arguments on December 6, 2021. As the record is now complete, the Court can rule on Mr. Haak's Motion to Dismiss.

Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate).

Analysis

A.)	Introduction

A court may dismiss a case under 11 U.S.C. § 707(a) "only after notice and a hearing and only for cause." 11 U.S.C. § 707(a). Section 707(a) lists three examples of "cause": unreasonable delay, nonpayment of fees and failure to file schedules and statements. These examples are intended to be non-exclusive illustrations of "cause." *Zick*, 931 F.2d at 1126. The *Zick* court further clarified that a:

> [d]ismissal based on lack of good faith must be undertaken on an *ad hoc* basis. . . . It should be confined carefully and is generally utilized only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, and excessive and continued expenditures, lavish lifestyle, and intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence.

*Zick*, at 1129 (citation omitted).

As directed by *Zick*, the Court should review the totality of the circumstances. The relevant factors a court is to consider in making this determination include:

1. The debtor reduced his creditors to a single creditor in the months prior to filing the petition.

2. The debtor failed to make lifestyle adjustments or continued living an expansive or lavish lifestyle.

3. The debtor filed the case in response to a judgment[,] pending litigation, or collection action; there is an intent to avoid a large single debt.

4. The effort the debtor made to repay his debts.

5. The unfairness of the use of Chapter 7.

6. The debtor has sufficient resources to pay his debts.

7. The debtor is paying debts to insiders.

8. The schedules inflate expenses to disguise financial well-being.

9. The debtor transferred assets.

10. The debtor is over-utilizing the protection of the Code to the unconscionable detriment of creditors.

11. The debtor employed a deliberate and persistent pattern evading a single major creditor.

12. The debtor failed to make candid and full disclosure.

13. The debts are modest in relation to assets and income.

14. There are multiple bankruptcy filings or other procedural "gymnastics."

*Id.* at 1128-29.

Mr. Haak argues that the *Zick* factors support dismissal of this proceeding and also relies on the two above-cited cases involving boxers. The Court first addresses the *Zick* factors and then the other arguments raised by Mr. Haak.

B.) *Zick* Factors

1.) Factors 1, 2, 7 and 9

Mr. Haak does not rely on factors 1, 2, 7 or 9 in support of his motion so there is no reason for the Court to analyze these factors except to note that these factors are traditional factors that evidence bad faith that warrant dismissal. Of particular note is the lack of a lavish lifestyle or the unwillingness to reduce expenses that often tilt a court to dismissal of a case. Here, the Debtor lives modestly and has few expenses that could be reduced. None of these factors support dismissal of the Debtor's case.

2.) Factors 3, 5, 10, 11 and 14

Mr. Haak grouped these factors together in his brief and argues that Mr. Franklin filed his petition to avoid his obligations to Mr. Haak and thus unfairly used Chapter 7 to evade his obligations to Mr. Haak, resulting in procedural gymnastics. Here, Mr. Haak argues that Mr. Franklin filed bankruptcy because of the District Court Action. He also argues that the other creditors of Mr. Franklin are not actively contesting Mr. Franklin's bankruptcy, supposedly because they will be favorably treated afterward.

In reply, Mr. Franklin argues that he contemplated filing bankruptcy as early as 2018 but held off doing so. While he concedes the timing of his bankruptcy and the effect it may have on the contract under Section 365, he argues the effect of this statute is well-known and is not an unusual circumstance. Also, as argued elsewhere, the existence of other creditors of Mr. Franklin, notably the Internal Revenue Service and the State of Michigan, weaken Mr. Haak's argument. While true, the Court notes that Mr. Franklin's Chapter 7 discharge has little effect on any obligation he may owe each entity. These factors weigh in favor of Mr. Haak.

3.) Factor 4 - Effort to repay debts

Mr. Haak argues that Mr. Franklin made no effort to repay his debts and points to the $25,000 released to him as strong evidence of the lack of effort. In reply, Mr. Franklin points to his bank statements which show minimal income since 2019 when he had his last fight. Except for the $25,000, some of which was used to pay his attorney and some to pay immediate outstanding bills, it appears Mr. Franklin only has $12,000, which is exempt, to pay his creditors and to cover his ongoing living expenses. This factor weighs in favor of Mr. Franklin.

4.) Factors 6 and 13

Mr. Haak argues that Mr. Franklin's future income is significant and that his expenses and debts are modest. A fight in 2020 would have resulted in $45,000 to Mr. Franklin but it was cancelled when he contracted Covid. His next match was to net him $25,000 plus $5,000 for training expenses, but was likewise cancelled. Mr. Franklin points out that his future income is speculative and that he has not fought since 2019. Also, his hard assets, which are few, cannot be monetized easily, so he lacks resources to pay his debts.

The past two years of scheduled but cancelled fights make it difficult for the Court to weigh these factors. Mr. Franklin does not have significant assets and his expenses are modest. As a boxer, his career is short and dependent on many factors beyond his control. The Covid pandemic has made his future more uncertain to the point where the Court concludes these factors are in favor of Mr. Franklin.

5.) Factor 8 – Schedules that inflate expenses to disguise financial well-being

At his 2004 examination, Mr. Franklin testified that he really pays $500 per month for rent and food and has other expenses paid for him. This compares to the $2,550 reported in Schedule J. In reply, Mr. Franklin states that the numbers in Schedule J are what he would have paid if he had the money to do so.

While Mr. Franklin's expenses are not accurate, this inaccuracy does not disguise financial well-being. Mr. Franklin has not earned any income in 2021; earned $3,885 and $32,297 in 2020 and 2019, respectively, and received unemployment benefits of $2,698 in 2021 and pandemic relief of $5,000 in 2020. He also received $25,000 in June 2021. This factor is in favor of Mr. Franklin.

13

21-20657-dob    Doc 149    Filed 01/24/22    Entered 01/24/22 14:26:37    Page 13 of 17

6.) Factor 12 – Failure to make full and candid disclosures

Mr. Haak points to the above-mentioned overstatement of expenses, the $150,000 gross receipts funneled through his company, JFJR Inc., and $60,000 deposited into bank accounts which after expenses ended up as $32,297. He also points to $164,085 in debts that so far have not been reduced to judgment, much of which is owed to five individuals or entities close to Mr. Franklin. Mr. Haak also claims these debts are not well documented and supported.

In reply, Mr. Franklin argues the errors are minor and unintended, especially given the "hyper-scrutiny" of Mr. Haak's attorneys. He also notes that neither the Chapter 7 Trustee, the United States Trustee, or any other creditor has objected to his disclosures.

This factor is weighed slightly in favor of Mr. Haak. The errors are in some instances not material, but in other instances very significant. The income amounts cited by Mr. Haak in 2019 and 2020 are as he claims, but the older nature of these errors lack the impact on the overall picture of Mr. Franklin's financial situation. Likewise, the $25,000 received by Mr. Franklin should have been disclosed somewhere in the Statement of Financial Affairs, but was not.[2] The remaining $15,000 of the $25,000 was left in the account of Sovita Credit Union and disclosed in Schedules A/B and C, so there was some disclosure by Mr. Franklin. Overall, the Court tilts this factor in favor Mr. Haak.

C.) *Sammons* and *Jack* Opinions

Mr. Haak buttresses his argument that Mr. Franklin's Chapter 7 case should be dismissed by citing two cases where the debtor, a boxer, filed Chapter 7 to reject a contract. In *Sammons*, the debtor filed his petition at the suggestion of another promoter and listed assets of $950 and

---

[2] At oral argument, Mr. Franklin's counsel expressed concern over where this money should be disclosed. Between questions 4 and 5 of the Statement of Financial Affairs, which ask for information about any income from employment or from operating a business (question 4) and any other income received during this year and the previous two years (question 5), the $25,000 should have been disclosed.

14

$41,667 of debts owed to Mr. Anderson, the promoter who was the counter party to the debtor. Mr. Anderson was the only listed creditor, but the debtor subsequently amended his Schedules to include $12,707 additional debt owed to eight additional creditors. The *Sammons* Court found that the debtor filed his Chapter 7 case solely to avoid a contract between the debtor and a promoter and that the debtor was not in financial distress. *Id.* at 200. Accordingly, the debtor's Chapter 7 was dismissed.

Similarly, in *Jack*, the debtor filed a Chapter 7 petition to reject a management contract with Ringleader Boxing Management LLC. The debtor had $1,550 of assets and listed Ringleader as his only creditor. As in *Sammons*, the *Jack* Court dismissed the debtor's Chapter 7 because the debtor was not experiencing financial distress. As the *Jack* Court stated:

> Jack has not shown that he is financially troubled. As in *In re Sammons*, Jack lists but one creditor. And other than the breach occasioned by the bankruptcy filing, he does not owe that creditor anything at present. As a consequence, he may be poor, and he may be unable to work other than as a boxer, but he is not burdened by debt he can't pay. Rather, he is burdened by a contract as to his future actions, the very contract that he took advantage of for a year (even if in squalid and unwelcome circumstances) and sought to reject only when, by its terms, he stopped receiving support under it. Filing bankruptcy for the sole purpose of rejecting such a contract is an abuse of the bankruptcy system that constitutes cause for dismissal under Section 707(a).
>
> Jack filed his bankruptcy to reject a contract with his sole listed creditor. His schedules indicate that he owes money to no one else. While his circumstances are unfortunate, his misfortune is not related to existing debt. His filing to achieve the rejection of a nonconsumer contract in such circumstances is an abuse of the bankruptcy system that constitutes cause under Section 707(a).

*Id.* at 257-58.

*Sammons* and *Jack* are distinguishable from the instant case in that Mr. Franklin listed assets of $20,500 and liabilities of $164,085 owed to ten creditors, four of which are governmental entities that enjoy priority status. These liabilities may have been understated by approximately

15

$26,000 because the IRS filed a claim in the amount of $33,287, much higher than the $6,968 scheduled by Mr. Franklin. For good measure, the State of Michigan claim of $2,447 was scheduled by Mr. Franklin as $1,186. Mr. Haak makes a good point that many of the listed creditors are friends, relatives and business associates that may or may not be owed the amounts listed or enforce their rights. This point is blunted, however, by the other creditors that are owed significant sums in excess of Mr. Franklin's assets. Moreover, *Sammons* and *Jack* are only persuasive authorities that this Court need not follow. While this Court finds *Sammons* and *Jack* instructive, *Zick*, a Sixth circuit case, is controlling and the Court returns to that source.

D.) *Zick* application

The facts of *Zick* are instructive. Mr. Zick was a former employee of Industrial Insurance Services (IIS) who signed a non-solicitation agreement promising to not take trade secrets or solicit customers if he left IIS. He left IIS the following year, started his own company and solicited customers. IIS sued and a $600,000 mediation award was granted in its favor and against Mr. Zick. *Id.* at 1125-26. A few days later, Mr. Zick filed a Chapter 7 petition. *Id.* at 1126. He reported monthly income of at least $7,000, a gross annual business income of $361,000 with additional income from his non-filing spouse and $90,000 of assets, excluding real property and household goods. *Id.* at 1128. He listed $14,000 of debt to his mother, $33,000 to his wife and $100,000 of legal fees along with transfers or assignments of contracts, all apparently designed to protect Mr. Zick and certain creditors except IIS. *Id.* at 1129.

With this backdrop, the *Zick* Court articulated the fourteen factors to give courts an analytical structure to apply the "smell test". The Court has analyzed this matter using the fourteen *Zick* factors and finds that some factors are inapplicable, others in favor of Mr. Franklin and others

16

21-20657-dob    Doc 149    Filed 01/24/22    Entered 01/24/22 14:26:37    Page 16 of 17

in favor of Mr. Haak.  No factor is so strong to warrant dismissal even though a faint odor remains after this analysis.

Taking a broader view, Mr. Franklin is not like Mr. Zick, Mr. Sammons or Mr. Jack.  He is much more financially unfortunate than Mr. Zick, who had significant assets and established income streams.  While he is more in line with Mr. Sammons and Mr. Jack, he does have more creditors and more debt than either of these debtors.  On the whole, Mr. Franklin is closer to the unfortunate debtor who is in financial distress and deserving of relief from this Court.

Finally, the Court notes a practical barrier to dismissal.  The Chapter 7 Trustee has recovered assets, liquidated those assets, reviewed claims, and disbursed funds to claimants.  The remedy of dismissal sought by Mr. Haak could disrupt this effort.  In that regard, Mr. Haak still has ample remedies as requested in a pending adversary proceeding.  These remedies, which may be tailored to fit the unique circumstances of this case, strike the Court as the better course as opposed to dismissal of this action.

## Conclusion

With this record, the Court finds and concludes that Mr. Haak has not met his burden of proof to meet the "smell test" of *Zick* or the sufficient proof to establish the necessary *Zick* factors.  The Court does not find Mr. Franklin's case to be odor free, but there is not enough odor to warrant dismissal of this case.

The Motion to Dismiss is DENIED.  The Court will enter an order consistent with this Opinion.

**Signed on January 24, 2022**



/s/ Daniel S. Opperman
**Daniel S. Opperman**
**United States Bankruptcy Judge**