UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION – BAY CITY

IN RE:

JERMAINE MAURICE FRANKLIN, JR.,	Case No. 21-20657-dob
	Chapter 7 Proceeding
Debtor.	Hon. Daniel S. Opperman
_____/

OPINION REGARDING DEBTOR'S SECOND MOTION TO ENFORCE
REJECTION OF BOXER-MANAGER CONTRACT

Jermaine Franklin Jr., the Debtor in this case, seeks to have this Court determine whether he needs to continue boxing as required by a contract he signed with Mark Haak. Mr. Haak disputes Mr. Franklin's request and would have this Court prohibit Mr. Franklin from boxing unless Mr. Haak promotes and arranges his boxing matches. After review of the pleadings in this case and considering oral argument, the Court enters this Opinion.

Jurisdiction

This Court has subject matter jurisdiction over this proceeding under 28 U.S.C. §§ 1334, 157(a), and E. D. Mich. LR 83.50(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate).

Findings of Fact

Mr. Franklin is a professional boxer and signed a Boxer-Manager Contract ("Contract") with Mr. Haak retaining him as a manager. This Contract required Mr. Franklin to fight in professional bouts arranged by Mr. Haak. Mr. Haak was to promote Mr. Franklin's career and arrange these bouts. In return, Mr. Haak was to receive 30% of any fight proceeds. This arrangement was acceptable for many years but deteriorated to the point that Mr. Franklin sought a judgment from the District Court for the Eastern District of Michigan terminating the Contract.

1

Mr. Haak contested that request and filed a counter-claim. The Contract allowed Mr. Haak to extend the Contract by paying $25,000 to Mr. Franklin. Mr. Haak exercised this right, but the $25,000 was held in escrow in case Mr. Franklin appealed. The District Court ruled in favor of Mr. Haak and calculated the remaining days left on this Contract. Mr. Haak believed that this calculation was incorrect and appealed to the Sixth Circuit Court of Appeals. Pending this appeal, Mr. Franklin petitioned the District Court to have a $25,000 deposit released to him because he did not appeal the District Court's opinion. The District Court entered an indicative ruling releasing these funds and the parties entered into a stipulation that allowed for the release of these funds. Mr. Franklin received the $25,000 and subsequently filed this Chapter 7 case.

Mr. Franklin filed a Motion with this Court seeking a determination that the Contract was an executory contract and was rejected as a matter of law because neither Mr. Franklin or the Chapter 7 Trustee elected to assume the Contract. Mr. Haak responded to the Motion, the Court heard oral argument, and entered an Order on February 3, 2022 holding that the Contract was rejected, but reserving a determination of the effect of that rejection. The next day, Mr. Franklin filed the instant Motion to address the effect that the rejection of this Contract has on the parties. Again, Mr. Haak responded to this Motion and the Court heard oral argument on March 8, 2022.

Arguments of the Parties

Mr. Franklin argues that the effect of a rejection of an executory contract is that he need not perform under the Contract, citing *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652 (2019); *FERC v. FirstEnergy Sols., Corp.*, 945 F.3d 431, 454 (6th Cir. 2019); and *Caliber N.D., LLC v. Nine Point Energy Holdings, Inc.* (*In re Nine Point Energy Holdings, Inc.*), 633 B.R. 124 (D. Del. 2021). To summarize Mr. Franklin's argument, he posits that the effect of rejection per *Tempnology* is to excuse his performance. Mr. Haak takes the opposite view and argues that

Mr. Franklin misapplies *Tempnology* and *FirstEnergy*. He also points to the cases of *Kennedy v. Medicap Pharm., Inc.,* 267 F.3d 493 (6th Cir. 2001) and *In re Jack*, 471 B.R. 252 (Bankr. D. Nev. 2012).

<u>Discussion and Analysis</u>

The *Tempnology* Supreme Court opinion addressed the effect of rejection of an executory contract in a Chapter 11 proceeding. Basically, the *Tempnology* Court concluded that rejection of a contract does not rescind the contract. As the *Tempnology* Court stated:

> Today we consider the meaning of those provisions in the context of a trademark licensing agreement. The question is whether the debtor-licensor's rejection of that contract deprives the licensee of its right to use the trademark. We hold it does not. A rejection breaches the contract but does not rescind it. And that means all the rights that would ordinarily survive a contract breach, including those conveyed here, remain in place.

*Tempnology*, 139 S. Ct. at 1657-58.

The facts in *Tempnology* are different than those in this case, but are instructive. In *Tempnology*, Tempnology manufactured clothing and accessories and marketed these products under the name of "Coolcore" by using trademarks to distinguish its products. Mission Product enjoyed an exclusive license to distribute certain Coolcore products in the United States and a non-exclusive license to use the Coolcore trade name. *Tempnology* filed a Chapter 11 petition and sought to reject its contract with Mission Product. Although this contract was deemed rejected, Mission Product could continue to enjoy the use of the trade name without causing any monetary impact on Tempnology. As stated by the *Tempnology* Court: "In this case, the bankruptcy court (per usual) approved Tempnology's proposed rejection of its executory licensing agreement with Mission. That meant, as laid out the above, two things on which the parties agree. First, Tempnology could stop performing under the contract. And second, Mission could assert, (for

whatever it might be worth) a pre-petition claim in the bankruptcy proceeding for damages resulting from Tempnology's non-performance." *Id.* at 1658-59 (citation omitted).

The *Tempnology* Court, therefore, had to deal with the rights that Mission Product had to use Tempnology trademarks. Since there was no adverse monetary impact on Tempnology by that use, the Supreme Court ruled in favor of Mission Product. The Supreme Court did not rule, however, that Tempnology had to continue either manufacturing the products or otherwise perform under the contract. Instead, the *Tempnology* Court assumed that Tempnology would not need to perform whatsoever. In this case, the continuation of Mr. Franklin's duties appear to have an adverse monetary impact on him and would require him to perform. The holding and rationale of *Tempnology* requires him to do neither.

The second case cited by Mr. Franklin, *FirstEnergy*, is also a Chapter 11 case. In *FirstEnergy*, the Sixth Circuit Court of Appeals held that rejection of a contract by the debtor was appropriate, but that the Bankruptcy Court over-extended its jurisdiction by enjoining the Federal Energy Regulatory Commission from enforcing the contract which was within its jurisdiction. The *FirstEnergy* Court made an initial observation of interest in this case:

> But, before we proceed, there are some things about this case that bear recognizing or keeping in mind. First, this is not a liquidation, this is a debtor-in-possession restructuring. If this were a liquidation, neither FERC nor anyone else could compel the defunct debtor to keep performing the contracts or prevent the debtor from breaching the contracts by non-performance – hence, an analogy to liquidation does not help.

*FirstEnergy*, 945 F.3d at 442.

In making the statement, the *FirstEnergy* Court makes no reference to any statute or case law and does not address or mention the *Kennedy* decision. Since the primary focus of *FirstEnergy*

was whether the Bankruptcy Court properly enjoined FERC, a more detailed discussion of *FirstEnergy* would be of little use. The Court now turns to the cases cited by Mr. Haak.

In *Kennedy*, the debtors signed a franchise agreement with Medicap that contained a non-compete clause. They subsequently breached that agreement by terminating their agreement with Medicap and reopening their pharmacy under a different name, all in violation of the covenant not to compete. Medicap sought to enforce the non-competition provisions by filing an action in the Iowa State Court which was removed to the United States District Court for the Southern District of Iowa. A few months later, the debtors filed a Chapter 13 petition, but converted their case to a Chapter 7 proceeding. In that procedural posture, the Bankruptcy Court lifted the automatic stay to allow Medicap to continue its action for an injunction in District Court. The *Kennedy* Court analyzed the case by first looking to see if Medicap had a claim under Section 101(5). In doing so, the *Kennedy* Court concluded that it needed to look to state law to determine if the remedies available to Medicap were exclusively monetary or equitable. If monetary damages could be allowed, then the relief to Medicap was a claim discharged in the debtors' Chapter 7. If only injunctive relief was available, then Medicap would be entitled to that relief because no claim existed. The *Kennedy* Court limited its analysis to Section 101(5) and did not address any Section 365 concerns.

The other case cited by Mr. Haak, *In re Jack*, has the closest facts to the instant case. In *Jack*, the debtor entered into an agreement with Ringleader Boxing Management, LLC, to have Ringleader manage his career for five years. Mr. Jack believed that Ringleader did not live up to its part of the agreement and filed a Chapter 7 seeking to reject the contract. The *Jack* Court concluded that Ringleader had additional rights that were not considered claims under Section 101(5) and that a negative injunction could very well be entered against Mr. Jack prohibiting him

5

21-20657-dob    Doc 165    Filed 03/28/22    Entered 03/28/22 14:31:39    Page 5 of 9

from boxing for anyone else. But in J*ack*, the Court did not enter a negative injunction and instead held that that his case should be dismissed. The language in *Jack* regarding a negative injunction, therefore, is at best dicta. Also, the *Jack* decision is persuasive authority and not binding on this Court. Moreover, *Jack* was decided seven years before *Tempnology* and did not have the advantage of the *Tempnology* holding and rationale. The Court now returns to another post *Tempnology* decision.

The *Nine Point Energy* case cited by Mr. Franklin adds more analysis to *Tempnology*. In *Nine Point Energy*, the debtor entered into a contract with Caliber in which Caliber had exclusive rights to transport oil and gas products from Nine Point Energy's wells through Caliber's pipeline. Nine Point Energy filed a Chapter 11 petition with the court and sought rejection of this contract. The Bankruptcy Court allowed the rejection of the contract and also excused Nine Point Energy from performing under the contract. Caliber appealed to the District Court and the District Court affirmed the decision of the Bankruptcy Court. As the *Nine Point Energy* District Court opinion states:

> When a debtor rejects a contract, it "repudiat[es] any further performance of its duties." *Mission Prod.*, 139 S. Ct. at 1658. *Mission Product* stands for the proposition that rejection cannot restrain a non-debtor's use of its contractual rights that do not depend on the debtor's future performance; it does not allow a non-debtor to force the debtor to perform under a contract after its rejection. The Bankruptcy Court correctly distinguished *Mission Product* from this case; unlike the trademark licensee who could use the debtor's intellectual property without the involvement of the debtor, "in this case under the express terms of the MSA, Caliber has no right to use the Interests and Dedications <u>except</u> in its performance of the contracts," (Appx.9A-0702 (emphasis in the original)), which can only occur after the Debtors perform by extracting fluids and sending them to Caliber for processing and transportation. The necessary performance by the Debtors was the foundation of the Bankruptcy Court's ruling. As the Debtors correctly point out, Caliber's reading would allow any contract counterparty to inoculate itself from the effects of rejection by including an exclusivity provision in its contract. Such a broad and overarching result would fundamentally impair a debtor's ability to reorganize by forcing it to continue to perform under burdensome contracts, contrary to the purpose of § 365 of the Bankruptcy Code.

6

*Nine Point Energy*, 633 B.R. at 135-36.

The observations of the *Nine Point Energy* Court are applicable to the instant case. Mr. Haak's reading of Section 365 would allow him to protect himself from the effects of rejection, especially in an exclusivity situation. This reading fundamentally impairs Mr. Franklin's ability to enjoy a fresh start as allowed by Chapter 7.

The *Nine Point Energy* decision is not binding on this Court and is at best persuasive authority as well. But the rationale of *Nine Point Energy* which includes exclusivity provisions of the contract, much like those in this case, coupled with being a decision after *Tempnology* is more persuasive than *In re Jack,* which was decided years before *Tempnology*, does not include any Section 365 analysis, and was limited to whether the debtor's Chapter 7 should be dismissed. Moreover, the Court cannot ignore the language cited in *FirstEnergy* which, although dicta, assumes that in a liquidation situation, such as here, Mr. Franklin would not have any duty to perform after rejection of the Boxer-Manager Contract.

The Court returns to the *Kennedy* decision to reconcile *Kennedy* with *FirstEnergy*. Initially, the Court notes that *Kennedy* is a slightly different case in that the creditor, Medicap, sought enforcement of a contract in another court, the District Court for Iowa. In *Kennedy*, the Bankruptcy Court lifted the automatic stay to allow Medicap to do exactly that. In doing so, the *Kennedy* Bankruptcy Court concluded that Medicap enjoyed a claim because Medicap could not be compensated solely by money. In *Kennedy*, the Court cited a Michigan case, *In re Kilpatrick*, 160 B.R. 560 (Bank. E.D. Mich. 1993), for the proposition that a breach of a covenant not to compete can be reduced to monetary damages. If the instant Contract is of similar nature, and the teachings of *Kilpatrick* and *Kennedy* are that if Mr. Haak's damages can be reduced to monetary

7

damages, then his claim is dischargeable in Chapter 7 and he is not entitled to any injunctive relief. The instant Contract, however, is silent as to whether Michigan or Pennsylvania law applies and neither party has addressed that issue.

The procedural history of *Kennedy* is also instructive. In *Kennedy*, the Bankruptcy Court lifted the stay to let another court of general jurisdiction make the final determinations as to whether an injunction should or should not be the issue. In this case, that Court would be the District Court for the Eastern District of Michigan where an action between Mr. Franklin and Mr. Haak is pending.

After considering these authorities, the Court concludes that the direction given by *Tempnology*, *FirstEnergy* and *Nine Point Energy* is the better course. First, this case is a Chapter 7 and the imposition of performance of the Contract would frustrate Mr. Franklin's fresh start. Second, Mr. Haak's request to prohibit Mr. Franklin from boxing unless Mr. Haak arranges and promotes Mr. Franklin seems to accomplish no meaningful end for Mr. Haak in that he will receive no money whatsoever if Mr. Franklin merely sits out the remaining term of the Contract, which he would have the right to do. Finally, *Nine Point Energy* makes an excellent distinction between the rights of Mission Product, which was to use trademarks of *Tempnology* with no adverse effect on *Tempnology* but in this case the use of an exclusivity provision for the benefit of Mr. Haak has serious adverse consequences to Mr. Franklin. Moreover, as noted earlier, the *Tempnology* Court assumed as a given that Tempnology would not be required to manufacture products for Mission Product. By analogy, Mr. Franklin should not be forced to box at the behest of Mr. Haak.

Alternatively, this Court could follow the direction of the *Kennedy* Court and merely lift the automatic stay to allow Mr. Haak to return to the District Court to answer the open issues that still remain. First, is the Contract in this case governed by Pennsylvania or Michigan law? Second,

under the applicable law, is Mr. Haak's relief limited to only equitable relief? If Mr. Haak's damages can be calculated at a monetary level, then the *Kennedy* and *Kilpatrick* decisions hold that he is not entitled to the requested injunctive relief because he has a claim under Section 101(5).

As to Mr. Franklin's second Motion, the Court grants the relief requested. As this Court is aware that Mr. Haak has appellate rights, he may appeal this Court's decision and raise the issues addressed by this Court either directly in regard to Mr. Franklin's Motion or request that the District Court treat these issues as the *Kennedy* Court did and allow the District Court to make its rulings consistent with the *Kennedy* analysis. To the extent necessary, the Court lifts the automatic stay to allow such a request to the District Court for the Eastern District of Michigan.

Counsel for Mr. Franklin is directed to prepare an order consistent with this Opinion and the entry of order procedures of this Court.

**Signed on March 28, 2022**



/s/ Daniel S. Opperman

**Daniel S. Opperman**
**United States Bankruptcy Judge**